UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HARCO NATIONAL INSURANCE COMPANY,

        Plaintiff,                          Case No. 06-cv-11314

v                                             Honorable Thomas L. Ludington

SLEEGERS ENGINEERING, INC., et al.,

        Defendants.

_____/

**ORDER DENYING MOTION TO COMPEL, DIRECTING SERVICE OF ORDER ON SCHWANS FOOD COMPANY, CANCELLING HEARING, AND DENYING MOTION TO EXTEND DATES**

      This litigation arises out of a Schwans food truck that ignited while Zaremba's employees were providing maintenance. The resulting fire substantially damaged Zaremba's business. Harco, as Zaremba's subrogee, seeks funds from Defendants that it contends were responsible for the design of the fuel system in the Schwans food truck.

      On June 19, 2014, Harco filed a motion to compel production of exemplar against Schwans Food Service. The main thrust of Harco's motion seeks an order from this Court requiring Schwans to produce an exemplar of the truck that allegedly caused the destructive fire. Although the brief in support of the motion to compel focuses almost exclusively on the questions of whether the exemplar produced by Schwans was adequate, Harco also requests that this Court (1) "allow Harco to depose Ryan Lamb regarding the installation by Monroe Truck"; and (2) "compel Schwans to identify by part number all component pieces supplied to Monroe Truck and Zaremba for installation on the subject truck. . . ." Mot. Compel 6, ECF No. 98.

Harco's motion to compel a deposition of Ryan Lamb will be denied because Mr. Lamb is an employee of Defendant Monroe Trucks, not Schwans. In addition, the motion to compel will also be denied because this Court lacks authority to order a non-party, Schwans, to engage in discovery absent Harco's procedural compliance with the Federal Rules of Civil Procedure.

# I

The issue raised by Harco's June 19, 2014 motion is whether the truck produced by Schwans on April 21, 2008,[1] was an exemplar of the truck that caught fire on February 21, 2003. Harco advances only one argument concerning the truck that Schwans produced: that it was not an exemplar because it contained a different fuel outlet. According to Harco's expert's affidavit, the truck had "the fuel outlet on the tanks . . . outside the tank cover." Mot. Compel, Ex. A. at ¶ 7. And because the original truck had a fuel outlet that "was not separate from the tank cover," *id*. at ¶ 8, Harco's expert concluded that the second truck "was not an exemplar." *Id*. at ¶ 9. Harco does not, however, produce any photographs or any other piece of evidence showing that the fuel outlet was on the outside of the tank cover, as Harco's expert suggests.[2]

Schwans disputes the allegation that the fuel outlet was outside the tank cover, however. It has attached the affidavit of its own expert, Victor Van Dyke, who was the Director of Engineering for Bi-Phase Technologies. In his affidavit, Mr. Van Dyke explains how the fuel tank system in Schwans truck fleet functions:

---

[1] Schwan's had previously produced a truck on March 20, 2007, that had only a single fuel tank. Both Harco and Schwans agree that the March truck was not an exemplar to the original Zaremba truck, which had two fuel tanks. Mot. Compel ¶ 7.

[2] In addition to the expert's affidavit, Harco attaches numerous exhibits to its brief that are, apparently, service and maintenance records. Harco does not explain, however, how these records are relevant to the motion to compel. Harco seems to imply that the original truck had extensive maintenance performed on it, and that Schwans is aware of that maintenance. But Harco does not explain if or how that maintenance affected the fuel outlet. For example, did the maintenance on the original truck change its fuel outlet by moving it outside the tank cover? And if so, is Schwans obligated to alter a functioning truck that does not need such maintenance in order to conform with the original?

> On a two tank GM 7.4 liter engine (both exemplar and Zaremba vehicle), only one tank supplies fuel to the engine, the primary tank via a primary fuel line. The fuel from the secondary tank is used when the primary tank runs low and fuel is then transferred to the primary tank through a transfer line which is connected to one of the two fuel inlets (80% fill valve) on the primary tank. A secondary tank only has one fuel inlet (80% fill valve).

Resp., Ex. A at ¶ 14, ECF No. 113. Mr. Van Dyke further testifies that the primary and secondary fuel tanks on the second truck and the original truck are identical:

> [T]he primary LPDM[3] for the Zaremba vehicle (even though it was destroyed in the fire) and for the exemplar vehicle are identical. The secondary LPDM for the Zaremba vehicle and the exemplar vehicle are identical. The primary and secondary LPDM's utilized for GM 7.4 liter engines did not change in design. Their componentry remained identical, outlet locations are identical, their manner of operation is identical.

*Id.* at ¶ 12.

After explaining the fuel system, Mr. Van Dyke explains why he believes Harco's expert reached his determination that the truck that was produced was not an exemplar. First, Mr. Van Dyke states that Harco's expert may have "compared the secondary LPDM of the Zaremba vehicle to the primary LPDM on the exemplar, and they are in fact not identical." *Id.* at ¶ 13. Second, Mr. Van Dyke believes Harco's expert misidentified a fuel inlet for a fuel outlet:

> It is possible [Harco's expert]'s reference to a "fuel outlet" is actually the fuel "inlet" (80% fill valve) for the tanks. The primary and secondary tanks each have a fuel inlet (80% fill valve) approximately the same location at the middle of the tank. However, the primary tank has an additional, second fuel inlet (80% fill valve), located adjacent to the LPDM. The fuel transfer line from the secondary tank connects at the "fuel inlet" located adjacent to the primary tank LPDM. It appears likely [Harco's expert] has mistaken the second fuel inlet on the primary tank next to the LPDM as being a "fuel outlet", which it is not.

---

[3] Harco's expert "does not utilize terminology that is completely clear in his affidavit. In it he talks about the 'tank cover.' It is presumed that he is referring to the tank bulkhead or cover plate, which for the Bi-Phase system, that is known as the LPDM. An LPDM is a patented modified cover plat for an LP fuel tank for a BiPHase LPEFI system." *Id.* at ¶ 10.

*Id*. at ¶ 15.  Moreover, Mr. Van Dyke states that at no time has a fuel outlet even been placed on the outside of the tank cover/LPDM.  He therefore suggests that Harco's expert is simply mistaken:

> [Harco's expert] states in his affidavit that the fuel outlet location on the exemplar vehicle is different.  He is wrong.  The fuel outlet location or fuel line connection point on a Bi-Phase LPEFI system for these particular vehicles is on the LPDM itself and part of it.  That configuration has never changed for either the primary or secondary LPDM.

*Id*. at ¶ 16.  In further support of Mr. Van Dyke's testimony, Schwans attached several photos identifying the corresponding fuel inlets and outlets on the proposed exemplar truck and the original truck.  *See* Resp., Exs. Q, R, S, T, and U.

In contrast to Schwan's exhibits detailing the similarities between the proposed exemplar and the original truck, Harco proffers only its expert's conclusion that the "fuel outlet . . . was not separate from the tank cover."  Mot. Compel, Ex. A. at ¶ 8.  Moreover, Harco's expert's response affidavit does not dispute Mr. Van Dyke's assertions:

> 11. One of the photographs depicts the outlet of the propane fuel container and identifies this as 80% fill valve "inlet" for transfer from secondary tank. This opening in the propane fuel container is required to be equipped with a manual shut off as described in NFPA 58-2001.
>
> 12. If an exemplar truck with duel propane fuel containers operated by Schwans Home Service is available in your truck fleet, I would inspect the propane fuel containers for any additional container openings which are required to be protected.  *This inspection is important because it will allow me to comment on the contents of Mr. Vandyke's Affidavit*.

Reply, Ex. A, ECF No. 117 (emphasis added). Thus, Harco's expert does not dispute the allegations in Mr. Van Dyke's affidavit, but instead requests another look at the rejected truck.

**II**

First, it is noteworthy that Harco seeks an order against Schwans entitling it to depose Ryan Lamb, an employee of Monroe Truck. *See* Mot. Compel at ¶ 18 ("Documents produced by Defendant Monroe Truck indicate its employee Ryan Lamb performed the installation."). Thus, somewhat perplexingly, although Harco wants to depose a Monroe Truck employee, it is seeking to compel Scwhans to produce the employee. Nowhere does Harco cite any support for its request. This Court is without the authority to compel Scwhans to produce another Defendant's employee. Indeed, if Harco is seeking to depose a Monroe Truck employee, it would have been more appropriate to seek discovery from the employer, Monroe Truck.[4] Accordingly, Harco's motion to compel a deposition from Ryan Lamb is denied.

**III**

Having addressed Harco's first discovery request, Harco's second and third discovery requests are next in line. Here, there are two discovery rules at issue: Rule 26, governing discovery between parties, and Rule 45, governing discovery on non-parties. Harco's motion to compel seeks production from Schwan's, a one-time defendant in this case. However, about three months after Harco filed its motion to compel, it voluntarily agreed to dismiss Schwans from the case. *See* Stipulation and Order, ECF No. 119 (dismissing Schwans without prejudice pursuant to the parties' stipulation).

Despite dismissing Scwhans from the litigation, Harco did not update or supplement its motion to compel, nor did it address how the dismissal would affect the pending motion to compel. Therefore, a reasonable inference is that Harco does not believe that Schwans's dismissal affects the motion to compel.

---

[4] It is noteworthy that Harco has already voluntarily dismissed Monroe Trucks from the lawsuit. *See* Stipulated Order of Dismissal, ECF No. 124. Therefore, if Harco does seek discovery from Monroe Trucks concerning its employee Ryan Lamb, Harco will have to proceed via Federal Rule of Civil Procedure 45.

However, the Federal Rules of Civil Procedure and the federal courts have clarified that different rules apply to parties than non-parties:

> The discovery rules distinguish between parties to litigation and non-parties. Some rules permit discovery only from parties. Others permit discovery from non-parties, but impose additional burdens for obtaining such discovery. . . .
>
> Similarly, any person may be required to produce documents and any property may be inspected. *See* Rule 34. If the person is not a party to the litigation, the party seeking such discovery must utilize a subpoena to compel such discovery. *See* Rule 34(c).

*Blazek v. Capital Recovery Associates, Inc.*, 222 F.R.D. 360, 361 (E.D. Wisc. 2004) (quoting *In re Liu*, 282 B.R. 904 (Bankr. C.D. Cal. 2002)).

As explained in *Blazek*, non-parties who were originally parties—for example, a defaulting defendant—is nonetheless still treated as a non-party. This is because such a non-party

> loses many of the rights of a party, such as the right to receive notice of future proceedings . . . the right to present evidence on issues . . . and the right to contest the factual allegations in the complaint. . . . However, once a defendant has made the decision to default and become, as it were, a non-party, it would not seem fair to force such defendant to participate in an action to a greater degree than could be required of other non-parties.

*Id.* at 361; *see also Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1158-59 (9th Cir. 2010) (adopting the reasoning of *Blazek*).

Thus, under the circumstances, it appears that the Court may not treat Schwans as a "party" for the purposes of complying with discovery obligations. And because Schwans is no longer a party to this action, Harco's motion to compel will be analyzed under the Federal Rule governing production of property by non-parties: Rule 45.[5]

---

[5] Rule 45 governs the request for documents from non-parties, and therefore Harco's request to depose Ryan Lamb and for identification of all component pieces are properly covered by this provision. Harco's request for an exemplar, however, is governed by Rule 34(c), which governs the production of tangible things from non-parties.

**A**

Federal Rule Civil Procedure 45 establishes the rules for discovery directed to individuals and entities that are not parties to the underlying suit through the use of a subpoena. Fed. R. Civ. P. 45(b)(1) requires that if a subpoena is served on a non-party and requests the production of documents, notice must be served on each party before the subpoena is served. Subpoenas served in accordance with Fed. R. Civ. P. 45 must fall within the scope of discovery set forth in Fed. R. Civ. P. 26(b)(1).

Thus, by the terms of Rule 45, a party seeking discovery from a non-party must serve that non-party with a subpoena. Here, there is no evidence that Harco served a subpoena on Schwans, nor does Harco make any representations that it did so. Because Harco has not complied with the first step of seeking discovery from a non-party, its motion to compel will be denied.

**B**

For completeness, however, this Court will also examine Harco's motion to compel pursuant to Rule 26. Under Federal Rule of Civil Procedure 26(b)(1), discovery is permitted of "any nonprivileged matter that is relevant to any party's claim or defense." Federal Rule of Civil Procedure 26(b) is to be liberally interpreted to permit wide-ranging discovery of information, even if that information is not ultimately admitted at trial. *See also* Fed. R. Civ. P. 26(b)(1) ("[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). To determine the proper scope of discovery, a district court should balance a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, at *907 (6th Cir. May 22,

---

However, Rule 34(c) explicitly incorporates Rule 45, and therefore this Court need only address Rule 45 when addressing Harco's motion to compel.

2009 (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)). "This approach does not mean oceanic fishing expeditions will be permitted. Much of discovery is a fishing expedition of sorts, but the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water." *Myers v. Prudential Ins. Co. of America*, 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008).

But even applying the standard set forth in Rule 26,[6] Harco's motion to compel should and will be denied. First, as noted above, Rule 26 governs discovery from parties only. It does not imbue the Court with power to compel discovery from non-parties. Although Schwans was a defendant when Harco filed its motion, Harco has since voluntarily dismissed Schwan's from the litigation. *See Blazek v. Capital Recovery Associates, Inc.*, 222 F.R.D. 360, 360-61 (E.D. Wisc. 2004) (concluding that plaintiff could not request discovery pursuant to Rule 26 from a defendant against whom judgment had already been entered). Accordingly, Harco's motion to compel pursuant to Rule 26 will be denied because the Court is without the authority to enforce it.

## IV

On October 6, 2014, Harco also filed a motion to extend the dispositive motion and motion in limine cutoff dates. *See* Mot. Extend, ECF No. 120. The Court had previously set a deadline for Defendants to file motions regarding damages on or before October 10, 2014. Order Lifting Stay, ECF No. 109. Although Harco was not subject to this filing deadline, it nonetheless requested an extension, contending that "it is in the best interest of all to adjourn the dispositive Motion date to a time to be set in the future and after the matter of the exemplar is concluded."

---

[6] Harco's motion to compel Schwan's to produce an exemplar was filed before these two parties agreed to a voluntary dismissal. However, Harco did not supplement its original motion with information on whether the dismissal had any effect on the outstanding motion. Because Harco has not complied with the requirements of Rule 45, it is reasonable that it would want this Court to analyze his motion under Rule 26.

- 9 -

Mot. Extend ¶ 3. Defendants Bi-Phase Technologies, Sleegers Engineering, and Sleegers Machining and Fabricating all opposed Harco's motion to extend. Bi-Phase Resp., ECF No. 121; Sleegers Resp., ECF No. 125.

Because Harco's motion to produce an exemplar will be denied, the "matter of the exemplar is concluded." Moreover, Defendants have already filed their motions challenging Harco's damages calculations. *See* Mot. in Limine, ECF No. 122; Notice of Joinder, ECF No. 123. Thus, an extension of the motion-filing dates is not warranted.

**V**

As explained above, the Court concludes that oral argument is not necessary to the disposition of Harco's motion to compel and will not aid in the resolution of this matter. Therefore, the Court will cancel the hearing scheduled for November 5, 2014 at 2:00 p.m. *See* E.D. Mich. L.R. 7.1(f)(2).

Accordingly, it is **ORDERED** that Plaintiff Harco's Motion to Compel (ECF No. 98) is **DENIED**.

It is further **ORDERED** that Plaintiff Harco is **DIRECTED** to serve Schwans Food Company with a copy of this Order within fourteen days of entry of this Order.

It is further **ORDERED** that the November 5, 2014 hearing is **CANCELLED**.

It is further **ORDERED** that Plaintiff Harco's Motion to Extend (ECF No. 120) is **DENIED**.

                                      s/Thomas L. Ludington
                                      THOMAS L. LUDINGTON
                                      United States District Judge

Dated: October 22, 2014

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 22, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS