UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HARCO NATIONAL INSURANCE COMPANY,

Plaintiff,

Case No. 06-cv-11314

v

Honorable Thomas L. Ludington

SLEEGERS ENGINEERING, INC., et al.,

Defendants.

_______________________________________/

**ORDER GRANTING DEFENDANTS' MOTION IN LIMINE IN PART, DIRECTING PLAINTIFF TO RESPOND TO DEFENDANTS' INTERROGATORIES, CANCELLING HEARING, AND SCHEDULING FINAL PRETRIAL CONFERENCE AND TRIAL**

Plaintiff Harco National Insurance Company initiated this subrogation lawsuit after it paid almost $5,000,000.00 to its insured, Zaremba Equipment. Harco, as subrogor, maintains that Defendants' negligence led to a fire that destroyed Zaremba business and building, and therefore it seeks recovery from Defendants.

During a status conference after the state court litigation concluded, it was apparent that a significant issue concerned whether certain categories of damages—such as the expenses incurred during the state court litigation and the damages arising from Zaremba's accusation against Harco that it was underinsured—were recoverable. And, "[t]o refine outstanding issues regarding the damages calculation," Order 4, the Court directed Harco to answer Defendants' damages interrogatories.

On October 10, 2014, Defendants filed a motion in limine regarding Harco's answers to the damages interrogatories. Defendants contend that Harco's answers "are entirely evasive and woefully deficient, completely failing to appropriately respond to the information requested."

Mot. Limine 3. Defendants therefore request that Harco be barred from asserting claims for damages. *Id*. at 4.

Defendants' motion in limine will be granted in part because Harco has not sufficiently responded to the damages interrogatories. Instead of barring Harco's damages claims in full, however, Harco will be directed to provide full and complete responses to Defendants' interrogatories in light of this Opinion and Order. Moreover, as a matter of law, Harco is not entitled to certain categories of damages it seeks, and therefore summary judgment will be granted with respect to these damages issues.

**I**

On February 21, 2003, Zaremba was servicing a Schwans food truck at its place of business in Otsego County. While Zaremba's mechanics were working on the truck's fuel system, the fuel ignited for some reason.[1] The resulting fire substantially damaged Zaremba's building and its business.

Harco, as Zaremba's insurer, agreed to pay certain amounts, including:

| | |
|---|---|
| Customer Vehicles: | $106,140.00 |
| Business Income: | $234,148.00 |
| Employee Tools: | $69,500.00 |
| Electronic Equipment: | $70,000.00 |
| Accounts Receivable: | $37,714.39 |
| Building: | $535,000.00 |
| Contents: | $700,000.00 |
| Total: | $1,752,502.00 |

[1] According to Harco's second amended complaint, Defendant Bi-Phase Technologies designed or manufactured the food truck's fuel system, and Sleegers Engineering and Sleegers Machining designed or manufactured the propane storage tanks for the food truck.

Mot. Limine Ex. A at 3-4.

Dissatisfied with the payment, Zaremba filed suit against Harco in Otsego Circuit Court. The Michigan Court of Appeals summarized the trial court result of Zaremba's lawsuit:

> The jury found for plaintiff [Zaremba] on all claims, and awarded damages exactly as itemized by plaintiff's accounting expert, including an award of $496,185 for breach of contract, $284,554 in penalty interest, and $42,481 for "recovery of insurance proceeds." As to plaintiff's building and contents, the jury awarded $1,556,558 under three separately entitled theories on the verdict form: negligence, fraud or misrepresentation, and promissory estoppel.

*Zaremba Equipment, Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 157-58 (Mich. Ct. App. 2008) ("*Zaremba I*"). The Michigan Court of Appeals then affirmed the award in part and rejected the award in part:

> We affirm the judgment in favor of plaintiff regarding its breach of contract, recovery of insurance premiums, and penalty interest claims. We reverse the judgment in favor of plaintiff on its claims of negligence, fraud, and innocent misrepresentation, and remand for a new trial of these claims consistent with this opinion. We also reverse and vacate the judgment in favor of plaintiff for promissory estoppel, and vacate the trial court's order granting case evaluation sanctions and prejudgment and postjudgment interest.

*Id*. at 171.

A second trial followed in the Otsego Circuit Court, as well as an additional appeal. The Michigan Court of Appeals summarized the second trial court's conclusion:

> A properly instructed jury found Musall negligent and determined that Musall had made an innocent misrepresentation, but rejected Zaremba's fraud claim. The jury further determined that Zaremba's comparative negligence constituted a proximate cause of its damages. The trial court entered judgment for Zaremba in the amount of $1,745,264.40 plus interest, and subsequently awarded $134,739.33 in costs and attorney fees.

*Zaremba Equipment, Inc. v. Harco Nat'l Ins. Co.*, 837 N.W.2d 686, 691 (Mich. Ct. App. 2013) ("*Zaremba II*"). The Michigan Court of Appeals thus affirmed the second trial court's conclusions, and the Michigan Supreme Court denied Harco's appeal.

While the state court litigation was pending, Harco filed a subrogation claim against Defendants in this Court. This matter was stayed, however, pending resolution of the state court litigation. After the state court litigation was resolved, this Court reopened the instant matter and—following discussion with counsel during the status conference—directed Harco to respond to Defendants' damages interrogatories. Defendants claim that Harco's answers were evasive and non-responsive, and that Harco would not be entitled to the damages it seeks in any event.

**II**

As a general matter, "[p]ayment of the subrogated debt is a prerequisite to attaining subrogation rights . . . ." *Tarzwell v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2262186, at *2 (Mich. Ct. App. June 3, 2008) (citing *Morrow v. Shah*, 450 N.W.2d 96, 99 (Mich. 1989)). Here, Harco asserts that it has paid $4,702,569.00 under the insurance contract with Zaremba, and therefore it is Zaremba's subrogor.

These past payments of the obligation also fix the extent of amounts to be claimed pursuant to those rights. That is, the past payments create a ceiling on the amount recoverable by the subrogee. In this case, Harco has made past payments to its insured, Zaremba, in the amount of $4,702,569.00. Accordingly, as subrogee, the maximum amount that Harco can recover in the present lawsuit is $4,702,569.00.

However, there is an important limitation on the rights of a subrogee that must be taken into account: In general, the subrogee can be reimbursed only to the extent of the amounts paid in discharge of the obligation assumed by the subrogee. *Yerkovich v. AAA*, 610 N.W.2d 542, 544 (Mich. 2000). In other words, a subrogee "stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor." *Id*. (quoting *Shermer v. Merrill*, 33 Mich. 284, 287 (1876); *see also Citizens Ins. Co. of America v. American Community Mutual Ins. Co.*,

495 N.W.2d 798, 799 (Mich. Ct. App. 1992) ("Regardless of whether a right of subrogation arises by operation of law or by contract, the controlling general principles are the same: the subrogee, upon paying an obligation owed to the subrogor as the primary responsibility of a third party, is substituted in the place of the subrogor, thereby attaining the same and no greater rights to recover against the third party."). Therefore, subrogee Harco may only recover those amounts that Zaremba would have been able to recover against Defendants.

**A**

Because Harco is entitled to recover only the amounts that Zaremba could have recovered in a suit against Defendants, the burden is on Harco to show that it is entitled to those amounts. As stated in its response brief, "Harco's position is that it is entitled to collect what it paid to satisfy the Judgments with the exception of penalty interest." Pl.'s Resp. 2. In other words, Harco claims that it does not need to break down and categorize the damages it seeks, as requested in Defendants' interrogatories: "Harco's contractual subrogation claim therefore, consists of the amount that was paid before litigation . . . It does not have to be broken down by coverage section because the total amount is claimed without regard to what section of the policy it was paid under." *Id*. at 3.

Harco's position—that it is entitled to recover every penny it paid to Zaremba, regardless of the reason it paid—is not supported by caselaw:

> The right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. In other words, the concept of subrogation merely gives the insurer the right to prosecute the cause of action which the insured possessed against anyone legally responsible for the latter's harm; and this is so even though the right of subrogation is expressly declared by statute.

*Auto Club Ins. Ass'n v. New York Life Ins. Co.*, 485 N.W2d 695, 699 (Mich. 1992) (quoting 16 Couch, *Insurance*, 2d, § 61:37). In other words, because Harco made payments to its subrogor,

Zaremba, Harco may now maintain a negligence action against Defendants. Harco may only recover the damages that Zaremba could have recovered from Defendants in a negligence action.

**B**

Harco also contends that it is entitled to recover every cent it paid because those payments are subject to collateral estoppel in light of the state court litigation. Harco claims that the state court litigation has already tried and determined the amount Zaremba is entitled to. And because Harco, as subrogee, is entitled to everything Zaremba is entitled to, Harco can recover $4,702,569.00 from Defendants. Moreover, Harco continues, because those amounts have already been litigated, Defendants are precluded from challenging the amounts in this Court.

In Michigan,[2] collateral estoppel applies if "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel."[3] *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845-46 (Mich. 2004) (quoting *Storey v. Meijer, Inc.*, 429 N.W.2d 169, 172 n.3 (Mich. 1998)).

Harco cannot meet any of the elements necessary to invoke collateral estoppel. First, only some of the damages Harco requests were actually litigated—indeed, in its response to Defendant's interrogatory, Harco admits that some damages amounts were never litigated: "Harco paid contractual damages voluntarily in these amounts according to our claim records. *They were not litigated*." Mot. Limine Ex. A. at 4 (emphasis added).

Second, and most importantly, the instant action does not involve the same parties or their privies. In the state court cases, Zaremba, as insured, sued its insurer, Harco. None of the

[2] "[I]n diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).

[3] "Mutuality of estoppel" is present if the party "taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Monat*, 677 N.W.2d at 846-47.

current Defendants were parties in the state court litigation, and they were not in privity with any party in the state court litigation. Accordingly, collateral estoppel does not bar challenges to Harco's damages claims.

Harco is not entitled to every cent it paid Zaremba as a matter of law, and it must instead prove that it is entitled to each category of damages it seeks. Accordingly, Harco will be directed to fully respond to Defendants' interrogatories regarding damages.

**A**

A full and complete response will also clear up remaining damages issues, as explained below. Given Harco's theory that it is entitled to everything it paid to Zaremba, it has refused to fully respond to Defendants' interrogatories. Harco will be directed to fully respond to the interrogatories, paying especial attention to the following issues.

**i**

First, Defendants claim that Harco did not adequately respond to its interrogatories concerning the calculation of its damages. Defendants maintain that Harco has refused to provide any detail regarding the damages to property it seeks.

In determining the damages recoverable in an action for negligent destruction of property, Michigan follows the rule set forth in *O'Donnell v. Oliver Iron Mining Co.*, 247 N.W. 720 (1933). That rule provides:

> If injury to property caused by negligence is permanent or irreparable, [the] measure of damages is [the] difference in its market value before and after said injury, but if [the] injury is reparable, and [the] expense of making repairs is less than [the] value of the property, [the] measure of damages [the] cost of making repairs.

*Id.*; *see also Price v. High Pointe Oil Co.*, 828 N.W.2d 660, 664 (2013).

In light of this well-established rule, Defendants sent interrogatories requesting information regarding how Harco valued the damages it is seeking. Harco, in response, refused to provide the information, insisting that it is entitled to everything that it paid to Zaremba.

> 6.  For each item of damages listed in your itemization, please state the factual basis for the value listed and the legal standard (actual cash value, fair market value, replacement cost, etc.) used to determine the value.
>
> **ANSWER**: The amount for each claim is "the extent of our payment" and the same can be said for both the claim for contractual subrogation and equitable subrogation.
>
> 7.  If you have calculated the value of any damages on any basis other than fair market value, please state the fair market value of each item before and after the fire.
>
> **ANSWER**: Insurance payments under the terms of this policy have nothing to do with "fair market value" which is not an insurance term. I explained the method of valuation in my answer to no. 6 above

Mot. Limine, Ex. A at 5.

However, as noted above, Harco may not be entitled to every single cent it paid Zaremba as a matter of law. Instead, it is limited to an amount that Zaremba would have been able to collect from Defendants in a negligence suit. Thus, Harco may be correct that "fair market value is not an insurance term." But this is not an insurance case—it is a subrogation suit. Given the governing law, Defendants are entitled to an explanation of how Harco is measuring its damages—such as the fair market value of the property before and after the fire.

**ii**

Second, as part of its interrogatory, Defendants seek confirmation that the actual cash value of Zaremba's destroyed building was $350,000.00. Defendants point to Harco's discovery response in the underlying state litigation where the litigation was focused on the specific value of lost items, in which Harco stated that "Defendant has paid $350,000, its opinion of the actual

cash value or merit value loss on the building portion of this claim." Mot. Limine Ex. A. Defendants interrogatory then proceeds to inquire whether Harco believes that the actual cash value has changed in any way since the time of its original discovery responses for the state court litigation. *Id*. at ¶ 3.

Although Harco concedes that it initially placed the actual cash value of Zaremba's destroyed building at $350,000.00, it nonetheless claimed that the issue "is irrelevant and immaterial and is not likely to lead to discovery of admissible evidence." *Id*. at 2. Harco's rationale appears to stem from its belief that a breakdown of damages is irrelevant because Harco is entitled to recover every cent it paid: "Harco has never revisited the issue because it had nothing to do with the calculation of damages in the prior case and has nothing to do with the calculation of damages in this case so it stands as it was stated." *Id*. at 3.

But as explained above, Harco is not automatically entitled to every cent it paid Zaremba in the underlying action. Rather, it is Harco's burden to show that it is entitled to the various categories of damages it seeks. Therefore, Harco will be directed to respond to Defendants' interrogatories seeking information on the actual cash value of Zaremba's building.

**iii**

Third, Defendants also seek clarification of the legal theory under which Harco purports to be able to recover business income, accounts receivables, and business electronic equipment damage.[4]

---

[4] Harco has broken down the individual costs as follows:

| | |
|---|---|
| Business Income: | $234,148.00 |
| Bus electronic equipment | $70,000.00 |
| Accts receivable | $37,714.39 |

Mot. Limine Ex. A at 3.

Defendants contend that Harco has not provided the legal theory that would entitle it to recover these damages, as requested by the interrogatories. Defendants further maintain "Harco has refused to identify under what specific coverages these items were paid so defendants can see the policy language to know exactly what they comprise, how they were calculated and the specific records supporting such a loss occurred." Mot. Limine 15.

Harco will therefore be directed to fully respond to Defendants' interrogatories, and to identify the specific coverages these items were paid under.

**iv**

Finally, Defendants also seek summary judgment on the issue of Harco may recover the interest it paid to Zaremba pursuant to Mich. Comp. Laws § 600.6013. According to its answer, Harco paid $198,748.00 in "Statutory interest" after the verdict in Zaremba I. Mot. Limine Ex. A at 4; Ex. C at ¶ 5 (awarding interest pursuant to Mich. Comp. Laws § 600.6013(8)). Harco was also required to pay interest after Zaremba II, but this amount was not broken down by the jury; instead, Harco was required to pay $397,541.00 for "Penalties and interest." Mot. Limine Ex. A at 4.

The parties disagree on the categorization of this interest. Defendants claim that it is postjudgment interest. Harco, however, claims that it is prejudgment interest. This type of dispute is a prime example of why full and complete answers to Defendants' interrogatories are necessary. Until the interest has been properly characterized, this Court cannot determine whether the interest is recoverable in Harco's subrogation suit.

**B**

Even though Harco has not fully responded to the interrogatories, it is nonetheless clear that it is seeking damages that it cannot recover as a matter of law. As explained above, the

primary limitation on Harco's recovery is that it has no greater rights than its subrogor Zaremba would have. The following categories of damages would not be recoverable by Zaremba, and therefore these damages are not recoverable by Harco.

**i**

Defendants next seek summary judgment on the issue of whether Harco can recover the amount it paid Zaremba in penalties. Specifically, Harco seeks reimbursement for "Penalty interest (MCL 500.2006)"[5] from the first state court trial and "penalties and interest" from the second state court trial. Mot. Limine Ex. A at 4.

As explained above, it is axiomatic that a subrogrogee may only recover those amounts that a subrogor may have been entitled to recover from the defendants. Here, the penalties were imposed against Harco for its conduct during the state court litigation—such as case evaluation sanctions. Subrogor Zaremba does not and did not have a claim against Defendants for those penalties. Because Zaremba would not be entitled to recover these penalties and awards from Defendants, Harco is likewise unable to recover them in this lawsuit. Accordingly, summary judgment is granted on this damages issue.

**ii**

Defendants next seek summary judgment on the issue of whether Harco can recover the "returned insurance premiums." That is, pursuant to the litigation in *Zaremba I*, Harco was

[5] Mich. Comp. Laws § 500.2006(4) requires an insurer to pay an insured interest when benefits are not paid in a timely manner, "if the claim is not reasonably in dispute." In *Zaremba I*, the Michigan Court of Appeals upheld the jury award pursuant to § 500.2006(4), though its holding was based on Harco's failure to challenge the award on appeal. *Zaremba I*, 761 N.W.2d 151, 170-71 (Mich. Ct. App. 2008) ("Because defendants have neglected to brief any issues criticizing the jury's verdicts on these claims, they have abandoned any legal challenges to these verdicts.").

obligated to return the insurance premiums Zaremba had paid pursuant to the insurance policy.[6] These insurance premiums totaled $42,481.00. Mot. Limine Ex. A at 4.

This is another type of damage that Harco cannot recover as subrogee. The insurance premiums were returned to Zaremba pursuant to the insurance policy—a binding contract between Harco and Zaremba.

In contrast, Zaremba did not have such a contract with Defendants; Zaremba can only recover damages associated with Defendants' negligence. Zaremba cannot recover insurance premiums from Defendants, and therefore Zaremba's subrogor—Harco—cannot recover those insurance premiums, either. Accordingly, summary judgment is granted on this damages issue.

**iii**

Defendants seek summary judgment on whether Harco can recover damages related to the costs it paid for Zaremba's employees' tools. Harco states that it paid $69,500.00 to Zaremba under the insurance policy for damaged employee tools. Mot. Limine Ex. A at 4.

Defendants claim that Harco cannot recover damages related to the employees' tools because Zaremba would not be able to recover those damages. That is, the employees owned their own tools—not Zaremba. Therefore, Zaremba could not have brought an action against Defendants for damages to property it did not own: "Absent . . . an assignment, Zaremba would not have been a real party in interest as to those tools and would lack standing to sue on them." Mot. Limine 14.

Harco nevertheless maintains that because it was obligated to pay for the employee tools pursuant to the insurance contract, it is entitled to recover those damages from Defendants.

[6] It is unclear why Harco was forced to return the insurance premiums. The Michigan Court of Appeals only noted that "defendants have failed to brief any legal challenges to the jury's awards regarding plaintiff's claim[] of . . . recovery of insurance premiums," and therefore Harco had abandoned any legal challenge on that claim. *Zaremba I*, 761 N.W.2d at 170-71. Moreover, Harco does not address Defendants' argument regarding insurance premiums in its response.

However, as noted many times throughout this Opinion, just because Harco paid an amount pursuant to the insurance contract does not mean that it is entitled to recover that amount in this subrogation suit.

Harco has produced no authority to support the proposition that Zaremba could have recovered the value of its employees' tools from Defendants, as is its burden. Accordingly, summary judgment is granted with respect to this damages claim.

**iv**

Defendants seek summary judgment on whether Harco can recover damages related to the various vehicles that were damaged in the fire. At the time of the fire, there were several vehicles owned by third parties[7] that were damaged. Harco states that it paid $106,140.00 to Zaremba for the damage to these third-party vehicles. Mot. Limine Ex. A at 3.

Defendants claim that the damage to the vehicles is not recoverable by Harco because Zaremba, as bailee for the vehicles, was not negligent. For a bailment for hire like Zaremba to be liable for the destruction of the vehicles, the bailor would have had to show that Zaremba was negligent.[8] *Godfrey v. City of Flint*, 279 N.W. 516, 518 (Mich. 1938) ("The bailment being beneficial to both parties, the duty of the defendant in keeping the property was substantially the same as in a bailment for hire. He was bound to keep and preserve the property with ordinary care—that care which a prudent man ordinarily takes of his own property.). Defendants explain that there has been no finding that Zaremba was negligent, and therefore Harco is not entitled to recover those damages.

---

[7] The vehicles belonged to Daniel's Pig & Dig, Derrer Oil, Stackus Funeral Home, International Harvester, and others. Ex. E at 21-22.

[8] Indeed, it appears that the insurance carrier for one of the bailors, Westfield Insurance, sued Zaremba for the damages to the customer vehicle. Br. at 13 n.4. The parties do not indicate whether that litigation is ongoing or what the outcome was.

Harco, in response, claims that collateral estoppel bars the consideration of this claim: "Harco unsuccessfully asserted it was not responsible for this at the trial of the matter. It lost and was required to pay." Pl.'s Resp. 12. But this statement is contradicted by its answer to Defendants interrogatories:

> Harco paid contractual damages voluntarily in these amounts according to our claim records. They were not litigated.
>
> Customer vehicles $106,140.00

Mot. Limine Ex. A at 3. Because the damage to customer vehicles was "not litigated", res judicata does not apply.

Aside from asserting res judicata, Harco has provided no justification or Michigan authority to allow recovery of the damages to customer vehicles. Accordingly, summary judgment will be granted on this damages issue.

**C**

In summary, to recover in this subrogation suit, Harco must show that the amount it seeks from Defendants would be recoverable by its subrogor Zaremba, had Zaremba brought suit against Defendants. Harco's argument that it is entitled to every cent it paid Zaremba is without merit, as is its argument that this Court is collaterally estopped from examining its damages claims. Accordingly, Harco is directed to provide fully responsive answers to Defendants' interrogatories within 28 days of entry of this Order.

But even without Harco's complete answers to the interrogatories, it is clear that Harco is not entitled to certain damages as a matter of law. As part of its litigation in state court, Harco was obligated to pay penalties related to trial (such as case evaluation sanctions). Zaremba would not be able to recover the penalties imposed against Harco from Defendants, and therefore, Harco, as subrogee, may not, either. Moreover, Harco cannot maintain a claim for the

insurance premiums it had to return pursuant to the insurance policy, employees' tools, or customer vehicles. Accordingly, summary judgment will be granted with respect to these damages claims.

**III**

Accordingly, it is **ORDERED** that Defendants' Motion in Limine (ECF No. 122) is **GRANTED IN PART**.

It is further **ORDERED** that Plaintiff Harco National Insurance Company is **DIRECTED** to respond to Defendants' Interrogatories within **28 days** of entry of this Order.

It is further **ORDERED** that summary judgment is **GRANTED** with respect Plaintiff Harco's damages requests for (1) penalties, (2) returned insurance premiums, (3) employee tools, and (4) customer vehicles. These categories of damages are not recoverable in Harco's subrogation action against Defendants.

It is further **ORDERED** that the hearing set for December 10, 2014 is **CANCELLED**.

It is further **ORDERED** that the Final Pretrial Conference is set for **March 24, 2015 at 4:00 p.m.**

It is further **ORDERED** that the trial is set for **April 7, 2015 at 8:30 a.m.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 25, 2014

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 25, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS